**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ANDRE T.,**

                **Plaintiff,**

    **v.**

**COMMISSIONER OF
SOCIAL SECURITY,**

                **Defendant.**

                              **Civil Action 2:25–cv–00903
Magistrate Judge Kimberly A. Jolson**

**<u>OPINION AND ORDER</u>**

Plaintiff Andre T. brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 8) and **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff filed his application for DIB on February 14, 2022, alleging disability beginning February 10, 2020, due to low vision, osteitis, tendonitis, severe knee pain, severe runner's knee, and chronic thoracic spine pain. (R. at 178–79, 254). After his application was denied initially and on reconsideration, the Administrative Law Judge ("ALJ") held a telephone hearing on December 13, 2023. (*Id.* at 15–37). Ultimately, the ALJ denied Plaintiff's application in a written decision on April 17, 2024. (*Id.* at 54–72). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–7).

Plaintiff then filed suit with this Court on August 12, 2025 (Doc. 1), and the Commissioner filed the administrative record on November 17, 2025 (Doc. 7). The matter has been briefed and is ready for consideration. (Docs. 8, 10).

### A.       The Administrative Record

In his opinion, the ALJ summarized and evaluated Plaintiff's statements to the agency, hearing testimony, medical records, and symptoms.  (R. at 63–65).  The ALJ also summarized and evaluated certain medical source opinions and prior administrative medical findings.  (*Id.* at 65–67).  Rather than repeat the summaries, the Court will focus on the evidence pertinent to Plaintiff's assigned errors below.

### B.       The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirements on June 30, 2023, and did not engage in substantial gainful activity during the period from his alleged onset date of February 10, 2020, through his date last insured of June 30, 2023.  (R. at 59).  The ALJ next determined that through the date last insured, Plaintiff had the severe impairments of knee impairment and degenerative disc disease of the lumbar spine.  (*Id.*).  The ALJ, however, found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  (*Id.* at 61).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> Through the date last insured, [Plaintiff] had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can lift fifty pounds occasionally, and twenty pounds frequently. They found that [Plaintiff] could frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. They found that [Plaintiff] could only occasionally kneel, crouch, or crawl.

(*Id.* at 62).

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 65).  The ALJ relied on testimony from a vocational expert to determine that, through the date last insured, Plaintiff was

2

capable of performing his past relevant work as a "drive sale route," hospital cleaner, "transporter patients," motor vehicle assembler, and store laborer.  (*Id.* at 67).  Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time from February 10, 2020, the alleged onset date, through June 30, 2023, the date last insured.  (*Id.* at 68).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."  *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).  "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court."  *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently."  *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.   DISCUSSION

Plaintiff brings three statements of error.  (Doc. 8).  First, Plaintiff challenges the ALJ's Step Two analysis.  (*Id.* at 9–12).  Second, he contends that the ALJ erred by finding that Plaintiff could perform medium exertional work.  (*Id*. at 12–16).  Third, Plaintiff asserts that the ALJ

improperly evaluated Dr. Syam's opinion.  (*Id*. at 16–20).  After considering each, the Court finds no error in the ALJ's opinion.

### A.      Issue One – Step 2

Plaintiff first asserts the ALJ erred by failing to label his depression as severe at Step Two of the sequential evaluation.  (Doc. 8 at 9–12).  He further argues that the ALJ did not follow SSR 96-8p by failing "to consider the Plaintiff's depression when forming [the] RFC."  (*Id.*).  The Commissioner counters that substantial evidence supports the ALJ's non-severe finding, this finding is not a reversible error, and she considered Plaintiff's depression impairment in crafting the RFC.  (Doc. 10 at 3–8).  The Court agrees with the Commissioner.

An ALJ must make several determinations at step two.  First, an ALJ considers if a claimant's impairment constitutes a "medically determinable" impairment, or an impairment that results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. §§ 404.1520; 404.1521.  A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 404.1521.  Additionally, it must meet the durational requirement.  20 C.F.R. § 404.1509.  "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC."  *Rieder v. Comm'r of Soc. Sec.*, No. 2:20–CV–5858, 2021 WL 5881784, at *4 (S.D. Ohio Dec. 13, 2021), *report and recommendation adopted*, No. 2:20–CV–5858, 2021 WL 6197808 (S.D. Ohio Dec. 30, 2021) (quoting *Moore v. Comm'r of Soc. Sec.*, No. 2:20–CV–5114, 2021 WL 5149714, at *7 (S.D. Ohio Nov. 5, 2021)).  "Plaintiff has the burden of proving the existence of a medically determinable impairment."  *Id.* (quoting *Moore*, 2021 WL 5149714, at *7).

If an impairment is medically determinable, then an ALJ must determine whether it is severe.  *Id.*  A "severe impairment" is defined as "any impairment or combination of impairments

4

which significantly limits [a claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). The finding of at least one severe impairment at step two is merely a "threshold inquiry," the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a [plaintiff]'s impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Id.* (quoting Maz*iarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

To begin, as the Commissioner correctly notes, the ALJ's failure to find Plaintiff's depression impairment severe at Step Two is not a reversible error. The ALJ found that Plaintiff had the following severe impairments: knee impairment and degenerative disc disease of the lumbar spine. (R. at 59). In such a situation, the inquiry is whether the ALJ considered all of Plaintiff's limitations in crafting the RFC. *Fisk*, 253 F. App'x at 583. Here, as detailed below, the record shows that the ALJ considered all of Plaintiff's limitations. Accordingly, Plaintiff's complaint that the ALJ should have found his depression impairment severe does not help him. (*See* Doc. 8 at 9–11).

Plaintiff's remaining argument that the ALJ did not consider his depression throughout the rest of the sequential evaluation fares no better. Concerning Plaintiff's mental impairments, the ALJ first discussed the opinions of Audrey Todd, Ph.D. and Aracelis Rivera Castro, Ph.D., the state agency psychological consultants. (*Id.* at 66 (citing R. at 39–42, 47–49)).

> Both doctors found that [Plaintiff] had mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentration, persistence, or maintaining pace; and mild limitation in adapting or managing oneself. I find that these opinions regarding no severe mental impairments persuasive because they are consistent, and supported by, with the general pattern of evidence contained in the hearing level record.

> [Plaintiff] has not sought out or receiv[ed] any mental health treatment, nor have his treating providers noted any mental status abnormalities. Further, he showed no abnormalities at the psychological CE.

(*Id.*).  The ALJ then evaluated the opinion of Susan Rowland, Ph.D., "the psychologist who performed [] a psychological consultative examination . . . ."  (*Id.* (citing R. at 510–21)).

> Dr. Rowland found that [Plaintiff] was capable of managing at least basic tasks and interactions (7F/12). However, Dr. Rowland indicated that [Plaintiff] appeared to have difficulty in understanding, remembering, and carrying out simple instructions, sustaining concentration and persisting in work-related activity at a reasonable pace, or maintaining effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public. Dr. Rowland found that [Plaintiff] appeared to have the ability to maintain effective social interactions with supervisors, co-workers, and the public. Dr. Rowland found that [Plaintiff] exhibited the ability to sustain concentration and persist in work-related activities at a reasonable pace in a position appropriate for his current circumstances. Dr. Rowland found that [Plaintiff] did not appear to have any deficits in his performance of activities of daily living (7F/11). I find that this opinion is mostly persuasive because it is generally consistent with the pattern of evidence contained in the hearing level record. However, on the whole there is little to no evidence to support significant limitation in sustain[ing] concentration or the ability to persist in work-related activities at a reasonable pace in a position appropriate for his current circumstances. Moreover, the lack of abnormal findings in the record supports finding [Plaintiff] is able to perform more complex work than this doctor opined. Additionally, the restrictions noted in this opinion are not supported by the generally normal findings from Dr. Rowland's mental status examination (7F/7–8).

(*Id.*).

This analysis shows the ALJ evaluated the state agency consultants and examiner's opinions regarding Plaintiff's mental limitations, including depression.  (R. at 66).  Although the ALJ does not use the term "depression" explicitly, it is clear that this is the limitation the ALJ refers to as she found no other medically determinable impairment related to Plaintiff's mental function.  (*Id.* at 61).

Even more, there is substantial evidence to support the ALJ's decision to omit functional limitations because of Plaintiff's depression impairment.  The ALJ compared the medical opinions and prior administrative findings of Dr. Todd, Dr. Castro, and Dr. Rowland to the record as whole,

including Plaintiff's symptoms and the lack of evidence of mental health treatment. (*Id.* at 60–61 (citing R. at 510–21); *id.* at 66 (citing R. at 39–42, 47–49)). Regarding Dr. Todd and Dr. Castro, neither Plaintiff nor the ALJ identify any restrictions that either doctor propounded, much less any that the ALJ omitted from the RFC. The ALJ also explained why she found parts of their opinions persuasive (*id.* at 66 ("these opinions regarding no severe mental impairments [are] persuasive because they are consistent, and supported by, with the general pattern of evidence contained in the hearing level record")), and others less so (*id.* at 60–61 (finding the evidence of record supporting no limitations on mental functioning instead of mild)).

As for Dr. Rowland's opinion, the ALJ concluded that it was mostly persuasive because "it is generally consistent with the pattern of evidence contained in the hearing level record." (*Id.* at 66). The ALJ, however, took issue with certain limitations and restrictions: "there is little to no evidence to support significant limitation in sustain concentration or the ability to persist in work-related activities at a reasonable pace" and "the lack of abnormal findings in the record supports finding [Plaintiff] is able to perform more complex work than this doctor opined." (*Id.* ("[T]he restrictions noted in this opinion are not supported by the generally normal findings from Dr. Rowland's mental status examination [].").

Ultimately, the role of the Court is not to reweigh the evidence, but to make sure the ALJ considered the proper factors and supported her conclusion with substantial evidence. *Holston v. Saul*, No. 1:20–CV–1001, 2021 WL 1877173, at *14 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). Here, the ALJ considered Plaintiff's depression impairment in crafting the RFC, and the Court can trace the reasoning behind the ALJ's conclusion that Plaintiff's depression impairment did not support functional limitations. Accordingly, Plaintiff's first assignment of error is without merit.

**B.      Issue Two – "Past Relevant Work"**

Plaintiff categorizes his next issue as a Step Four error (Doc. 8 at 12 ("the ALJ incorrectly found that Plaintiff could perform his past work"), but the core of his argument challenges the ALJ's conclusion that he had the RFC to perform medium work (*id.* at 12–16).   Plaintiff additionally contends that the ALJ applied the outdated version of SSR 24-2.  (*Id.* at 12).   The Commissioner responds that the physical RFC is supported by substantial evidence and the ALJ used the correct version of SSR 24-2.  (Doc. 10 at 8–12).  In line with Plaintiff's brief, the Court first addresses Plaintiff's argument under SSR 24-2 before turning to his RFC challenge.

*1.      Applicable Time Period for Past Relevant Work*

Plaintiff's argument that the ALJ should not have applied the previous version of SSR 24-2, with a "look-back" period of fifteen years, falls short.  He asserts that the "look back period" for Plaintiff's past relevant work should have been five years because the regulation changed while Plaintiff's case was pending before the Appeals Council.  (Doc. 8 at 12).  Although Plaintiff is correct that "the past five years" is the applicable benchmark now, it was not at the time the ALJ issued her decision on Plaintiff's application.  The ALJ issued her decision on April 17, 2024.  (R. at 57–68).  At the time, the regulations provided that "[p]ast relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 416.960(b)(1) (effective Aug. 24, 2012 to June 21, 2024). Effective on June 22, 2024, the SSA changed its definition of past relevant work to encompass work done within the past five years.  *See* Final Rule, Intermediate Improvement to the Disability Adjudication Process, Including How We Consider Past Work, 89 Fed. Reg. 27,653 (Apr. 18, 2024) ("We are revising the definition of past relevant work (PRW) by reducing the relevant work period from 15 to 5 years."); SSR 24-2p, 89 Fed. Reg. 48, 479 (June 6, 2024), 2024 WL 2846571 (hereinafter "SSR 24-2p"); 20 C.F.R. § 416.960(b)(1)(i) (effective June 22, 2024).

Because the ALJ's opinion came before June 22, 2024, the new five-year language does not apply to Plaintiff's claim.  The SSA makes this clear.  SSR 24-2p, at n.1 ("We will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").  Plaintiff provides no authority that a case pending before the Appeals Council changes this finding.  Courts across the country—including this one—have declined to apply the new language to decisions issued before June 22, 2024.  *See, e.g.*, *Sarah P. v. Comm'r of Soc. Sec.*, No. 1:25-CV-00950, 2026 WL 1758168, at *6 (S.D. Ohio June 18, 2026); *Brian B. v. Comm'r of Soc. Sec.*, No. 3:25-CV-187, 2026 WL 706584, at *9 n.1 (S.D. Ohio Mar. 13, 2026); *Obrien v. Bisignano*, 142 F.4th 687, 701 n.8 (9th Cir. 2025); *Minnis v. Comm'r of Soc. Sec.*, No. 24-11281, 2025 WL 974570, at *3 (11th Cir. Apr. 1, 2025); *Tina W. v. Comm'r, SSA*, No. 24-4029, 2024 WL 5165687, at *3 (10th Cir. Dec. 19, 2024); *Valerie W. v. Comm'r of Soc. Sec.*, No. 25-10323, 2026 WL 776359, at *4 n.2 (E.D. Mich. Mar. 17, 2026), *report and recommendation adopted*, No. 25-CV-10323, 2026 WL 786379 (E.D. Mich. Mar. 19, 2026).  The Court concludes that the ALJ did not err here.

### 2. RFC to Perform Medium Work

Turning to Plaintiff's argument that he could not perform work at the medium level of exertion (Doc. 8 at 13–16), the Court finds it likewise meritless.

A plaintiff's RFC "is defined as the most [she] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 416.913(a)(1).  The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical

9

findings.[1]  20 C.F.R. §§ 404.1513(a)(1)–(5), 416.920c(c)(1)–(5).  These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Indeed, the regulations require an ALJ to "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [she] considered" the other factors.  *Id.*  At bottom, the role of the ALJ is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston*, 2021 WL 1877173, at *11.  As noted earlier, the role of the Court is not to reweigh the evidence but to ensure the ALJ considered the proper factors and supported her conclusion with substantial evidence.  *Id.* at *14.

Here, the ALJ's determination that Plaintiff was able to perform work at the medium level of exertion is supported by substantial evidence.  First, the ALJ considered Plaintiff's statements

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . . .

§ 404.1513(a)(2), (5).

10

and his medical records.  (R. at 63 (Plaintiff "testified that he cleans his house and prepares food for his wife to cook. He said that he is able to dress himself and shop for groceries.") (citing R. at 30–31); *id.* at 63–64 (summarizing April 2020 MRI of right knee and lumbar results) (citing R. at 547, 478–80); *id.* at 64 (noting October 2020 MRI of right knee results) (citing R. at 525); *id.* (considering December 2020 physical exam of right knee and lumbar spine) (citing R. at 464–65); *id.* (same but for January 2021 exam) (citing R. at 530–32); *id.* (summarizing exams in July 2021, November 2021, and December 2021 that demonstrated improvement) (citing R. at 525, 540, 526); *id.* (same but for January 2022 exam) (citing R. at 535–36); *id.* (reporting in August 2022 that "he was minimally able to do household chores and grocery shopping, due to physical impairments," "attend to his personal care and cook simple meals," and he needed to sit or stand everything 30 minutes) (citing R. at 515); *id.* at 65 (noting unremarkable physical examination in October 2023 and Plaintiff's report that he walked 2–3 miles per day) (citing R. 622, 625)).  The ALJ also noted that both Plaintiff's prescribed treatment, including medications, and the fact that his self-described daily activities were "not limited to the extent one would expect given the functional deficits alleged" were inconsistent with his statements "concerning the intensity, persistence and limiting effects of his symptoms."  (*Id.* at 65).  She found "it difficult . . . to rely heavily on [Plaintiff's] subjective complaints to assess [Plaintiff's] residual functional capacity" because of the inconsistencies between his symptoms and medical records.  (*Id.*).

The ALJ then turned to the medical source opinions and prior administrative medical findings.  (*Id.* at 65–67).  She evaluated the opinions of state agency medical consultants Dr. Hughes and Dr. Siddiqui and found their conclusion of light work unpersuasive because it was "inconsistent with the general pattern of evidence."  (*Id.* (noting Plaintiff's exams in January 2021, July 2021, January 2022, and October 2023 and that "[r]ecords [s]how [Plaintiff] recovered well

11

after his motor vehicle accident.") (citing R. at 42–44, 49–51, 524, 530, 535, 620–34)).  The ALJ also considered one of Plaintiff's treating physical therapists, finding that provider's RFC assessment partially persuasive.  (*Id.* at 66–67 (concluding that the lifting restrictions were consistent with the overall medical evidence but not the 30 minute limit on sitting or standing) (citing R. at 538, 553–54)).  In sum, she found that "[f]urther restriction is unwarranted as his subjective complaints are only partial[ly] consistent with the objective medical evidence and there is no treating medical source statement to the contrary to consider and assess."  (*Id.* at 67).

To challenge the ALJ's crafted RFC, Plaintiff cites to his emergency room visit, physical therapy and doctor's appointments, imaging results, and his symptoms—all of which he argues demonstrates he cannot perform medium exertional work.  (Doc. 8 at 13–16 (citing R. at 23, 29, 32, 309, 324, 351–52, 400, 421, 459, 462, 474, 476–77, 482, 484, 506, and 520–21)).  At base, this is simply a request to reweigh the evidence.  But this Court may not do so.  "[I]t is not this Court's job to reweigh the evidence, but only to determine if the ALJ has evaluated it in a reasonable fashion."  *Whetsel v. Comm'r of Soc. Sec.*, No. 2:15-cv-3015, 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017).  And "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Even though Plaintiff points to evidence that he believes indicates that he cannot perform medium exertional work, the Court finds no error under this deferential standard.

### C. Issue 3 – Supportability and Consistency

Finally, Plaintiff asserts that the ALJ erred when she failed to address supportability and consistency in evaluating the opinion of Dr. Syam.  (Doc. 8 at 16–20).  The Commissioner disagrees, as does the Court.

As noted above, the regulations require an ALJ to "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings."  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion.  20 C.F.R. § 416.920c(c)(1).  When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2).

To begin, Plaintiff makes no real effort to challenge the ALJ's supportability and consistency analysis of Dr. Syam's opinion beyond his conclusory statement that the ALJ failed to address both factors.  (Doc. 8 at 20).  Instead, Plaintiff again asks the Court to reweigh the evidence.  (*Id.* at 20 (taking issue with the ALJ's finding that the state agency medical consultants' limitations were unpersuasive and citing to "[m]edical records which supported . . . the opinions of the state agency reviewers") (*see, e.g.*, R. at 309 (emergency room visit); *id.* at 351 (January 2021 exam); *id.* at 400 (June 2021 exam))).  And again, the Court cannot do so.  *Whetsel*, 2017 WL 443499, at *8; *Buxton*, 246 F.3d at 772 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.").  The Court, however, will briefly address the ALJ's supportability and consistency analysis.

The ALJ sufficiently evaluated the supportability and consistency of Dr. Syam's opinion. As to supportability, she notes that Dr. Syam's opinion restrictions were "based on an FCE performed 11/29/21, yet that examination was not provided as part of the medical evidence of

record; thus, I cannot assess whether these limitations are consistent with those exam findings (9F/10)." (R. at 67 (citing R. at 538)). *See Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence.") (citation omitted). As for consistency, the ALJ compared Dr. Syam's restrictions to the overall medical evidence. (R. at 67 (finding lifting and 6–8 hour sit/stand/walk restrictions consistent with overall medical evidence but not the limitation that Plaintiff must sit or stand every 30 minutes) (citing R. at 516); *id.* (also comparing the 30-minute restriction to Plaintiff's 2023 statement that "he walks 2–3 miles every other day") (citing R. at 622)). *See David W. v. Comm'r of Soc. Sec.*, No. 3:24-CV-00255, 2025 WL 841074, at *7 (S.D. Ohio Mar. 18, 2025) ("Here, the ALJ clearly evaluated the consistency of Dr. Swedberg's opinion by comparing his findings to other medical evidence and Plaintiff's subjective accounts of his symptoms. That is all the ALJ had to do."). In sum, the Court concludes remand is not warranted under Plaintiff's third assignment of error.

***

All told, the ALJ's opinion is supported by substantial evidence, and Plaintiff's alleged errors are without merit. The Court finds that remand is not required.

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 8) is **OVERRULED** and that judgment be entered in favor of Defendant.

IT IS SO ORDERED.

14

Date: July 24, 2026

*s/ Kimberly A. Jolson*
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE